Good morning, Your Honor. Thank you. Jason Ullman on behalf of Mr. Luis Mercado. With leave of court, I'd like to reserve three minutes for rebuttal. That's done. Thank you. United States v. Banks, footnote 56, encapsulates this case perfectly. What we're dealing with here is a clear, unambiguous guideline provision. The only ambiguity is injected when we start looking down at the application process. You introduced the issue of ambiguity, or more specifically a lack of ambiguity, from the start, page two of your brief. Could you just assist me, if you will, by setting the table for this argument and explaining how ambiguity or unambiguously, as you've termed it in your brief, impacts on our analysis here of 3E1.1a, especially in light of Adair? Yes, Your Honor. And I believe the court's well aware of the two-step process that is taken after Adair. Step one, we rely on the typical tools of statutory construction in determining, is the provision ambiguous? And those tools are text, structure, history, and purpose, along with the rule of lenity is a tool in the toolkit, according to the concurrence in Nassir. And then step two, if there is genuine ambiguity after exhausting the toolkit that we mentioned in step one, then we identify where is the zone of ambiguity, and giving the context and character of the ambiguity, do we owe deference to the commission's application? And your position is that there is no ambiguity in 3E1.1a, and therefore you would like us to limit our focus entirely to the text of that guideline and not go below the line, if you will, to any commentary? That's accurate, Your Honor. Yes. Not to be stuck on mootness, but I am curious, where's Mr. Mercado today? Is he out of prison? So he is. He's on supervised release for two years. And according to this court's holding in United States v. Jackson, 523F3rd at 241, that doesn't render the case moot. How far into his supervised release is he at this point? A couple of months, since February. Okay. Would the reduction in offense level from acceptance of responsibility affect his term of supervised release? Yes, Your Honor. As the court laid out in Jackson's side I just gave you, if he received a corresponding upon resentencing, if his sentence was lower, then he would receive credit towards his supervised release term. So if the district court upon resentencing sentences him to a term that is three months of prison shorter, those three months would be subtracted from the supervised release term, according to this court's holding in United States v. Jackson. So therefore, the case is moot. Can you help us on this point of what is so clear on the face of the text that we don't need to look back to guidelines? You're pointing to his offense, but what does that tell us about how one goes about demonstrating acceptance of responsibility? Yes, Your Honor. So relying on the statutory construction tools of text, structure, history, purpose, the court's letter of June 20th, pre-argument letter, really nailed the point on structure. Whenever, and this is the interpretive canon doctrine, it's mentioned in Scalia and Garner's horn book on reading law, whenever there's a regulatory scheme or a legislative scheme, typically at the beginning there are interpretive directives that are to be applied in the remainder of the scheme. And the directive that this court identified in its letter is 1B1.3. And when we turn to that provision in the guidelines, it says when you look at your Chapter 2 adjustments and your Chapter 3 adjustments, you're looking at the offense, the offense here. You're not looking at what this person did after pleading guilty. You're not looking at any conduct that's unrelated to this particular offense. Is he accepting the responsibility here? Doesn't it cut the other way? I mean, 1B1.3 deals with relevant conduct that can be considered, and the way that's been interpreted for district courts considering sentencing ranges quite broadly, doesn't it? Well, I don't think it cuts the other way, and that's because of the legislative history of 3E1.1 that this court addressed in Adair. So Adair is often cited for its analysis of 3B1.1. But also there was a very thorough examination of 3E1.1B in Adair. So in Adair itself, the court recognized that admitting relevant conduct that used to be part of the guidelines, it used to be in 3E1.1B, Congress, the legislative branch, amended 3E1.1B and deleted admitting relevant conduct, that complete information clause out of paragraph B, and they did not place it in paragraph A. So we know that what we're talking about here is admit your offense of conviction in 1.1.3 and you receive it. You've just added language when you say offense of conviction. Offense of conviction was what the guideline used to say, and then they changed it, and then they changed it again, but it's not offense of conviction. Your assertion seems to be that the words the offense are in every way the equivalent of offense of conviction, and the commission just went back to what it had said before. Is that it? I think that injecting language is not necessary. I think that it's understood that when we're calculating the guidelines, it's for the offense this person is going to get sentenced for. When we're calculating the guidelines, what we're talking about here is an adjustment under 3E1.1, and we have a relatively sparse record. We've got the probation office saying this person has not clearly demonstrated acceptance of responsibility because Mr. Mercado, he's recalcitrant. He refuses to participate in the drug program he's been asked to. He continues to show up with dirty errands. He's not doing the thing. He misses appointments. He stands us up. He's just not demonstrating that he's sorry for what he did, what he pled to. He's just being, you know, he may have said the words in court, I plead guilty, but he's not clearly demonstrated any remorse for the offense, so he doesn't deserve it. That's what the probation office seemed to say, and the district court, in basically a sentence, says, I agree with the probation office's assessment. That's the state of the record in front of us, right? Could I give you two responses to that, Your Honor? Sure, but start by telling me whether that's an accurate assessment of the state of the record or not, and then give me your explanation. I agree with that assessment, and the two responses, number one, those are all things the court can consider. Under 1B1.4 and 3553A, those are all things the court can consider when it is picking the point within the guideline range. The second response is none of that, none of that has anything to do with 1.1.1B1.3, which is the interpretive directive that we're supposed to apply when identifying these Chapter 3 adjustments. So none of that has to do with the offense, preparation for the offense, or avoiding... So your legal position clearly demonstrates acceptance of responsibility for the offense is the words spoken in the courtroom. If that 3.1.1 is just about getting up and saying, I did it, I did it, and I own the responsibility for it, and then that person can go out and do whatever they want while they're on release before sentencing, and all of that is irrelevant. That's not my position, Your Honor. Well, then what is your position? Can I walk you through it? Because that's what it sounds like you're saying. It sounds like you're saying, let me actually pose a hypothetical and see if this helps. What if instead of cocaine use and a refusal to appear before the probation office and participate in programs, what if Mr. Mercado had gone back to wire fraud while he was on release? Or for that more specifically, he'd gone back to defrauding the government on pandemic relief and wire fraud. Would that change your argument? No, Your Honor. If I may give the response? Sure. Thank you, Your Honor. 1B1.3 gives you the guidance right here. If whatever post-plea conduct can be interpreted, if there's a factual finding, that that was attempting to avoid detection or responsibility for that offense. So I can see post-plea conducts that would undermine acceptance, such as maybe calling a witness that's supposed to show up at your case and saying, don't come. I can see post-plea conduct that would undermine and that would, upon a factual finding, qualify as – while on release. That would not, in your view, he would still have clearly demonstrated acceptance of responsibility for the offense because you're reading offense as the offense of conviction. Right? Well, that would depend, Your Honor, on whether the new offense is in some way – I've tried to give you the hypothetical. He goes back to doing the exact same thing while he's on pretrial release. And if I understand your legal position, it is it doesn't matter. That's all irrelevant. The only thing that matters is he stood up in court and said, yeah, I did it. Right? Your Honor, can I give three responses to that? I'm unclear on the hypothetical if this new offense is in some way an evasion of responsibility or of detection. It has nothing to do with the offense of conviction. It has to do with doing the same thing again. That's the hypothetical I'm posing to you. So as long as there is no hindrance of the offense of conviction, which is that language at the bottom of 1B1.3a, as long as this is not hindrance or furthering that, then you're right, Your Honor, the court and the government have other remedies. They can bring a new charge. The government can withhold its paragraph B, additional point of acceptance, and the court should revoke bond. May I ask a question, please? Isn't the use of the word by the drafts person demonstrates problematic here? Because, as some of the questioning has suggested, it could be written another way. It could be written a way that plainly focuses on what the defendant admits to states at the time of the entry of a plea. But that's not the way it's drafted. It uses a very interesting word, demonstration, which goes beyond an articulation of acceptance of responsibility or even something in the nature of contrition, a word that this court has used, that Judge Becker used in one of our earlier cases dealing with acceptance of responsibility. So doesn't the use of the term demonstrates suggest something more, at least temporarily, than what a defendant admits to and or says at the moment or during the period of time he's standing before the district judge and admits to his offense? I see I'm out of time, Your Honor. May I answer the question? Please. You're on our time. Go ahead. I agree with your reading of the word demonstrates, Your Honor, but I think that that is there because it's a recognition that after saying I plead guilty, that person can do things that undermine the demonstration that they accepted responsibility. Think about a defendant who files a motion to withdraw a plea. But I agree with that, but it's got to be guided with does that undermine the responsibility for this offense, which is part of 1B1.3's ending paragraph right there. His offense is the precise wording of the guideline. But I mean clearly demonstrate that there is a definite temporal implications for the use of demonstrates, which might not otherwise exist had the draftsman tied acceptance to some specific point in time, such as the tendering of the guilty plea, right? That language is more than just tendering the guilty plea, yes, Your Honor. In fact, for the benefit of the defendant, also can and presumably does refer to actions indicative of an acceptance of responsibility that took place prior to the entry of the plea, but presumably after a determination had been made by the defendant and through counsel to tender that guilty plea. Maybe you've paid restitution in advance. Maybe you've taken other steps, right? I think that if it is. The defendant in this case, in fact, took such steps, didn't he? Your Honor, Your Honor is correct. There is that language does does imply a broader temporal, a broader temporal reading. It's not just the the act of getting up and pleading in court. What I would point out is that it introduced ambiguity. Your Honor, I don't believe that it introduces ambiguity. I think that once we're guided by 1B1.3 and that the offense that we are discussing here is his offense is this offense here. And I don't think it's any more ambiguous, ambiguous than any factual findings that the court has to make on a day to day basis in these guidelines provisions. I mean, think about a dare. The difference between an organizer leader versus a manager supervisor. That is going to be a factual finding based on a demonstration by the government. But this court said that language is clear. It's unambiguous. So just because it's a difficult analysis, just because it involves a factual finding, that does not mean equals ambiguous. It's just something difficult that you have to do on a regular basis, guided by clear text. What if we just stay with the text? If we agree that clearly demonstrates in the present tense, in the guidelines, which is what the court's considering at the time of sentencing, not at the time of conviction. So up to the present of sentencing is what the court's supposed to look toward. And for this particular offense, the terms of a defendant's release, standard terms, are going to include not committing another offense, reporting as required, cooperating with probation department, and a host of other standard conditions. Those are conditions for release in this offense. If a defendant, between entry of a plea and the actual sentence, violates those terms that were imposed for this offense, why don't we have on the face of the guideline that he has not demonstrated responsibility. Clearly demonstrated. He's not demonstrated responsibility at all, much less clearly demonstrated acceptance of responsibility, as of the time that the district court is tasked with sentencing him. So I think that the reason there's a problem there is, going back to our structural argument, that what we're looking at is has the person accepted responsibility for their conduct of the offense. And these ancillary matters put additional burdens on the defendant to do more than just take responsibility for his offense. It also requires the defendant to, that view, I believe, injects language into subparagraph A by saying, not only take responsibility for his offense, but comply with all terms and conditions, or comply with the plea agreement. Those things are additional. Why isn't that just instead a way of saying, not to get all paternalistic about it, but if a child does something they're not supposed to do and says, I'm sorry, I hit my little brother, and then you turn around and he hits his little brother again, is not the parent entitled to say, I don't really believe you're sorry. Your behavior is inconsistent with contrition. And your mere words are not enough. I expect commitment and not conversation from you. So if you're not getting the commitment that's shown by behavior, your mere conversation is not a sufficient demonstration. Why isn't that consistent with the guideline itself, regardless of commentary? So I think that, again, it's acceptance of this particular offense. And I understand what Your Honor is getting at, but there are other remedies available. And on that point, I mean, you've said, oh, she could have done, Judge Rambo could have done exactly the same under 3553A. So I guess what you're saying is if there was error but it was harmless? No, that's not my point, Your Honor. Well, is that the necessary implication? Or is it that you're saying we would be obligated to send it back for her and say to her, you could do exactly the same thing if you wanted to under 3553A? If I may, procedural sentencing error is not harmless, Your Honor. It would be worthy of a remand. And what the court directs in the opinion or in the order is the court's prerogative. Okay. Can I just ask about the logical implications of your argument? If it's that your position is that the district court can't accept or can't consider bad acts between a conviction and sentencing, what about good acts? Judge Smith had raised early payment of full restitution. If you had a defendant who entered a plea on the eve of trial where there was really a question about whether he was going to get acceptance of responsibility points, but there were these good acts of trying to make a victim whole, is it really the defender's position that the district court, in deciding whether or not to give points reduced for acceptance of responsibility, can't consider things like that early restitution? Well, Your Honor, I find it a little difficult to imagine hypotheticals where those pre-plea demonstrations of acceptance would not be, or those pre-plea positive conduct would not also be followed then by a plea. So I think that if this person pleads, then they have admitted responsibility for this offense. I think that's strong evidence for the district court to consider. It often happens. I mean, if a defendant enters a plea on the eve of trial, they may well not get points for acceptance of responsibility, right? Well, I respectfully disagree with that. That's certainly a reason that the government can withhold that additional point under B. But I disagree with that, Your Honor. If they've pled, I think that's the strongest evidence of acceptance of responsibility for the offense under Paragraph A. Well, that's a determination the district court can make. And let's limit it for the sake of really homing in on the point I'm asking you about to even that one remaining point. In the discretion of the district court, right, is it the defender's position that a district court cannot consider positive acts of a defendant in deciding whether or not to grant a third point for acceptance of responsibility, things like restitution that was made before sentencing but after the entry of a plea? I believe, Your Honor, as this court is well aware, the trial judge can consider everything under 1B1.4, can consider everything in the 3553A sentencing calculus. For acceptance of responsibility points? No, I'm sorry. In deciding where along the guidelines this falls. I just have a difficult time understanding how we'd be in a position where someone who pleads guilty does not, you know, how that is not the strongest evidence of their Paragraph A two-point acceptance of responsibility. Another thing that kicks in here, Your Honor, is the role of lenity that's mentioned in Nasir's concurrence in that if there is a question here, in this specific case, it adversely affected Mr. Mercado. And the court, the concurrence in Nasir points out that when we're looking at the statutory interpretation, role of lenity is one of the tools in the toolkit. And if we're seeing that application notes would be used in a manner that harms the defendant, then it will not be applied in this case. No indication at all that Judge Rambo looked at the application notes, is there? Well, Judge Rambo relied on Cekirani, the circuit precedent. Why do you say that? Judge Rambo didn't utter the word Cekirani, did she? Well, the trial attorney mentioned that, Your Honor, I realize that you're relying on Cekirani for this. Cekirani is wrong and that it should not guide it. So you're saying that because the lawyer said it, she must have relied on it. Well, Your Honor, I think that that's what was happening, Your Honor. Okay. And if I could just point out briefly that Cekirani was not prescient as this court articulated the test in Adair. So Cekirani should not receive, should not be liable. We got your briefing on that. Thank you, Your Honor. Thank you, Mr. Ullman. We'll have you back on rebuttal and we'll hear from counsel for the United States. Good morning. May it please the Court. My name is Christian Hogsby on behalf of the United States. The Court should affirm the judgment of the District Court that Louis Mercado did not clearly demonstrate acceptance of responsibility for his fraud offense in light of his continued and recalcitrant instances of drug use and his refusal to comply with the conditions of his pretrial release through substance abuse treatment. We know your position. Thank you. Why don't you go straight to Mr. Ullman's central point, which I believe to be this sentencing commission may have done a little bit of flopping around, but where they finally landed was not on criminal conduct, as the guideline once said, but on the words, the offense. And properly read, the offense means the offense to which that person pled guilty. And you can do all sorts of bad things, and a court might actually take account of all those bad things when reaching a final sentence under 3553A. But when you're applying the guidelines, there's a procedural pattern to follow. You're obligated to follow it. And if you're going to be saying acceptance of responsibility, you are limited to focusing on that offense of conviction. Done, end of sentence, end of paragraph, finito. Especially in light of the history of the amendments to the guidelines, 3E1.1A, why isn't that a really good argument? Offense means the offense of conviction, and she just had no business taking into account those problematic things when deciding whether he should get those points. Understood, Your Honor. Your Honor, as you allude to, the guideline in this case, 3E1.1, has been amended I think approximately eight times since it was first enacted. And the commission did, as you suggest, sort of flip-flop around in terms of how it was going to define what acceptance needed to be for. So I think initially that was for offense of conviction. Then it was for criminal conduct, and then it was to the offense. And that kind of indicates, doesn't it, that they knew what they were doing. They knew how to broaden it out, and they knew how to bring it back narrow, and they chose to go narrow. They chose to go narrow, and that binds the district court. The district court is not free to be counting on criminal conduct as if the guidelines had never been amended again to go back narrow. Understood, Your Honor. If I can try to answer it a little bit more specifically for you. In the case of where they honed in on the word offense, that's where we are now. That's where we've been since 1992 in terms of what a defendant must clearly demonstrate acceptance of responsibility for. I think the way I read that historical shift in the guidelines, in the language of the guidelines, is that when a defendant had to clearly demonstrate acceptance of responsibility for criminal activity, I think was the precise language of the guideline at one point. That potentially could invite a court to withhold a reduction for acceptance for virtually any kind of criminal activity the defendant had been involved in. Clearly, the guideline has focused more sharply on the actual offense in this case. What's the limiting principle to the position you're striking? Because in your briefing, you talk about how ambiguous this is, and therefore certainly the court could take into account the behavior of the defendant post-plea. How is the position you're advocating any different from the unsupportable position you've just articulated, which is you can look at anything, any criminal conduct at all? Your Honor, I think what I'm trying to get at is I don't actually think there's really ambiguity in terms of what the offense is, in terms of what a defendant must clearly demonstrate acceptance of responsibility for. The ambiguity comes prior to that word. The ambiguity is the prefatory language clearly demonstrate and also accept responsibility. Do you not get to the same spot of taking into account any criminal activity? Your Honor, the guideline really requires the exercise of discretion by the court to determine. Exactly, and more than discretion. I'd like to go there, please. Certainly. Let's look at that very unique role of the district judge, engaged not only in the important determination of whether or not to accept a plea of guilty, but the probably even more important determination as to sentencing, which is implicated in whether or not there's an acceptance of responsibility here. Is there not a factual determination being made by the district court as to whether or not there truly has been a clear demonstration of acceptance? Beyond our questions of ambiguity of ill-known, beyond our questions as to what this guideline says, doesn't the district judge have to decide as a matter of fact, as a matter of credibility, whether or not the defendant has demonstrated, and it will be for the court to determine whether it's a clear demonstration, of acceptance of responsibility? Absolutely, Your Honor. All right. Now, if that is the case, and again, we look sequentially as to how this unfolds, the defendant comes in with counsel and enters a plea at date A, and there's a PSR ordered and prepared, correct? Yes, Your Honor. And made available in the interim between then and the imposition of sentence, which occurs at point B. Now, isn't the construction being urged by the appellant here of 3E1.1 effectively an argument that anything occurring after the entry of the plea and is irrelevant to a determination of whether or not there's been a clear demonstration of acceptance, as a matter of fact, as a matter of credibility? That is, district judge, you may not consider these subsequent events as to whether or not you truly believe there's been a clear demonstration of acceptance. Judge Smith, that's certainly how I read the appellant's brief and understand their argument. Well, irrespective of whether that's how the appellant has articulated the matter, isn't that the practical implication for how this eventually unfolds in a courtroom before the district court? That you make a determination, district judge, as to whether or not there's been a clear demonstration of acceptance. You make it based upon what you have gleaned from your conversation in the entry of the plea, the colloquy from this defendant, and what you've seen in the PSR afterward. And it may be that the inclination at the time of the entry of the plea is that there was a clear demonstration of acceptance of responsibility for this offense. But isn't it possible, isn't it permissible, as far as the United States is concerned, for the district court, as a matter of credibility, to look at these subsequent events and say, I no longer believe or I don't believe there was a clear demonstration of acceptance here. Judge Smith, clearly I agree with that position. That is the position of the United States, that the defendant's conduct... Have you argued it that way in your brief? As a credibility issue? I don't think it's been characterized as a credibility issue, per se, Your Honor. But I think what's clear from the government's perspective is that the defendant's conduct is relevant up until the point of sentencing, at least with respect to determining if he has... Well, that's an important point, and that's what I'm getting at. Because it may not be relevant if we confine ourselves to a construction of the language of subsection A to this temporal period that would end, apparently, as of the date of the entry of the plea, and presumably the acceptance of the plea, or at least the entry of the plea. I don't know that it can be limited that way, even if you do confine it to an analysis. Isn't that the practical implication of saying that you can't consider any of these ameliorative steps, these steps demonstrative of demonstrating contrition that occurred after the entry of the plea, that they're not relevant? Judge Smith, I want to make sure I'm tracking you. I clearly agree with what I think you're suggesting, is that it is appropriate for the judge to be making findings based upon... I'm asking if it is. I do believe so, yes, Your Honor. I don't believe that that time stops or that the court presses pause the moment a defendant comes into court and says the magic words... The extent to which those subsequent events would be relevant to an acceptance of responsibility. Yes, because it's going to the relevant issue at 3E1.1 is the acceptance of responsibility, not the way that the offense itself is defined or what may come in as relevant conduct. How do you escape that? Because I take that to be Mr. Ullman's point, which is you could do all sorts of bad things, but they don't speak to whether you actually accept the responsibility for the particular thing you've pledged to. Hey, I got a terrible addiction. I do bad things because I have a bad addiction. I'm unreliable. But that doesn't mean I don't fully accept responsibility for having defrauded the United States. I do. I was a bad person. I'm sorry that I was a bad person in that respect. I don't want... I'm never going to again be a bad person in that respect. And the fact that I've got a drug addiction has nothing to do with my accepting responsibility for the offense. That is what I take his argument to be. And that once you stray beyond that, you've strayed beyond what 3E1.1A is directing you to, District Court Judge, and you shouldn't do that. That's the argument I hear him making. What's the answer to that? And I like the hypothetical, Your Honor, because what the appellant has characterized in this case, and did so before the trial court and I think has done so here, and your hypothetical suggested as well, is that, hey, I'm in the throes of drug addiction. What possible bearing does that have on whether I've accepted responsibility for a fraud, an unrelated fraud? Let me flip the hypothetical, Your Honor, and suggest that rather than being in the throes of drug addiction, you're a defiant drug user who refuses to comply with the conditions the court has prescribed for you, who refuses to show up for the treatment program that the probation office has prescribed for you. Those are two very different ways of looking at the same sort of underlying conduct because the motivation of the defendant is really in play. In both instances, the assertion, Mr. Ullman can speak for himself, but I understand the position of the federal public defender to be, it doesn't even matter whether he's contumacious. He's deliberately thumbing his nose at the court in that respect. That's something you can take account of, District Court Judge, when you're imposing the sentence under 3553A. But in correctly calculating the guidelines, it doesn't bear on whether he accepted responsibility or demonstrated acceptance of responsibility for the offense. And I guess what I hear you saying, correct me if I'm wrong, is, oh, yes, it does. Oh, I think it certainly does, Your Honor. How so? Explain why. Well, in the example I'm providing, if a defendant comes in and says, from this point forward. You know, that's going more than just, that's going further than just simply confessing to the offense. It's getting at what this court has acknowledged in Cekirani and subsequent decisions, that acceptance of responsibility is getting at something broader than mere. . . Oh, I don't think it's a dead letter, Your Honor. And what I would home in on in that case is I recognize in Adair, Adair sort of threw into doubt the precedent that didn't presciently engage in a post-Kaiser analysis. And I won't stand here and suggest to you that the court in Cekirani presciently got to every step of the multilayer analysis of our deference. But I will say that it took a couple of significant steps down the pathway there. When the court acknowledges early on in its decision that the language of 3E1.1 is, I believe the words the court used, very general. And the court. . . That has got nothing to do with the commentary, right? I mean. . . It has. . . I would offer, Your Honor. . . In most cases, they're about what poll the commentary has. Judge Krauss earlier asked Mr. Ullman, just confining yourself to the language of the guideline alone, your argument seems primarily to be not about the commentary. You focused on clearly demonstrates. That's. . . Your Honor, I'm not sure if you do here. Because I think that if the court just considers the plain language of 3E1.1, it's plainly inviting the court's exercise of discretion in making that factual finding that Judge Smith's suggesting. But the government absolutely maintains that the language leading up to the word offense in 3E1.1 is genuinely ambiguous. And would permit the court to rely upon commentary that itself is a reasonable interpretation of a genuinely ambiguous guideline. And I think if you go through the sort of layered analytical approach that's prescribed in Adair, in Messire, in Banks, in Perez. . . That the court would come to the conclusion that not only is the language of 3E1.1 ambiguous on its face. I mean, you know, we looked at dictionary definitions for this. And I would suggest to you, in contrast to some of this court's post-Kaiser jurisprudence where you're examining isolated words. Banks is a good example. Loss is the issue there in Adair, leader, or organizer. And even in Messire, you had a situation where the term, it wasn't a single word, but was itself defined. Yeah, we remember. Yeah. Okay. Your Honor. I think it's good that we do need to reach the commentary. Because the term clearly accepts or clearly demonstrates. Thank you. Clearly demonstrates is so broad that it's not clear it has any limits whatsoever. And that's why we need to look at the commentary to see at least what the contours are. Is that right? I think that's right, Your Honor. The language of 3E1.1 is not as rigid as the appellant is suggesting in this case. It does not compel a court to grant acceptance of responsibility if someone merely comes in and pleads guilty. I realize I'm out of time. May I continue to respond? Go ahead and wrap up, yes. Okay. Unless the judge has follow-ups. I'm happy to answer them. And I want to make sure I'm understanding your question correctly. I think you did. I just wanted to make sure we were on the same page about the government's position as to whether there's ambiguity on the face of the guideline text. There is ambiguity on the face of the guideline text, Your Honor, yes. Let me ask you as well, why isn't personal drug use different? That is, terms like clearly demonstrates, taking acceptance of responsibility, those are volitional things. And where there's someone who is putting forward an argument of drug addiction, something that's involuntary, that that should be treated differently. Fair enough, Your Honor. I guess I was trying to get to this with one of Judge Jordan's questions, and I'll try it again now and see if I do a better job. The issue of one person's drug addiction may be another person's contumacious recidivist conduct, Your Honor. There is really no record here other than counsel's argument that Mr. Mercado's of involuntary, habitual, addictive behavior. The point I was trying to make, Your Honor, is that it's really committed to the district court in the first instance to determine whether or not that activity does bear upon whether that defendant truly accepted responsibility, clearly demonstrated acceptance of responsibility for their underlying offense, or not. And, again, that's really a factual, evaluative determination that should be committed to the trial court in the first instance, and has been for the better part of 30 years since Sekharani in this court. So that takes us back to why should we be looking at the commentary? Why should you, Your Honor? Is that what you said? I'm sorry. Why should we be deferring to commentary, then? I mean, there's another direction this could go of saying, okay, it's ambiguous on its face, but when we then get to the step of are the criteria satisfied that we should defer to the commission's commentary about what is relevant, as opposed to leaving it to the discretion of the district court? What here shows that there is such expertise that this is in the specialized can of the commission that it should be the boundaries set in the commentary, rather than simply leaving the clear demonstration of acceptance of responsibility to the district court's determination? Certainly, Your Honor. And I want to address one thing that you just said, which I think you were suggesting that it was bounded by the commission's commentary. And what I think is a little bit interesting about 3E1.1's commentary is that it is unbounded. It's a non-exhaustive list that is meant to provide guidance to district courts as to what the commission believes may be relevant in making that particular determination in a case-by-case basis. So it doesn't purport to limit the district court's consideration of relevant factors, but it does provide, in the commission's expertise in the area of sentencing that was committed to it by Congress, that certain factors may be more weighty than others. And clearly the commission believed that coming in, as the appellant said, and pleading guilty and saying the right things is a significant step there. But the commission also has commentary suggesting that there may be circumstances and factors that the court may wish to consider that would bear upon that issue. Are you suggesting, even though you earlier said, yeah, yeah, it's ambiguous, you can look at the commentary, are you suggesting that it's not necessary to look at the commentary, that it's enough to look at the language and understand that in the words clearly demonstrates the commission has made it clear, not in the commentary but in the guideline, that discretion lies in the district court? I think that it is implied at least in 3E1.1 that the court has that discretion, Your Honor. I mean, the court has to make a finding in that regard. Good enough. Anything else, Judge? Okay. Thanks very much, Mr. Hogsby. Thank you. We'll have you back on rebuttal, Mr. Romer. Thank you, Your Honor. I'll end where we began. Banks footnote 56 entirely encapsulates this case. This is unambiguous textual provision, and the only time we get ambiguity injected here is when we start looking below that text and looking at these application notes. That's what's happening here. To the extent, Your Honor, as— in the words clearly demonstrates providing the district court with the kind of discretion we've just been discussing with Mr. Hogsby. So I think what that actually raises is a question of broadness, not of ambiguity but a question of broadness. Precisely. Is it not possible to look at that and say, look, this isn't ambiguous. This grants a very broad discretion to the district court. And I don't have to look at the commentary to figure that out. I can look at the word clearly demonstrates and understand just on those words alone, broad discretion in the district court done. Well, that's cabined in by our interpretive guidance. Remember the interpretive doctrine canon, 1B1.3, and we're talking about what is going on with his acceptance of the offense, planning for the offense, and any attempt to hinder— It almost sounds like you're saying, Mr. Romer, that it's not unambiguous because to understand what it is, you've got to go to 1B1.3 instead of just looking at 3E1.1 and saying, I get it. I get clearly demonstrates means broad discretion in the district court. No, you've got to look to another guideline to understand what it means. Is that what you're saying? No, Your Honor. I think structure is one of the things that we're supposed to apply in this year's Step 1, and that's structure. At the beginning of any kind of regulatory or statutory scheme, you're going to have these interpretive guiding canons or the canon of interpretive directive. That's what we're applying there. It's not making this ambiguous at all. It's actually doing what Justice Scalia says to do in reading law. Look at your interpretive canons in the beginning, and that's what guides your analysis here. So text is not enough. Indeed, text could never be enough because context is important. That's what you're saying. That's absolutely right, and that's what this court recognized in Banks, and that's in that same page with footnote 56. Loss can mean lots of things. It can mean intangible loss, the loss of a loved one. It could mean losing a game, losing the lottery. But in the context of sentencing someone, we're constrained in this context, and part of the context is that structure of what we're applying here. If I may quickly, Your Honor asked whether the application notes are even implicated here. They're unambiguously implicated because in the addendum to the PSR, trial counsel objected, and the probation officer's response was, Chekharani, application notes 1B, G. Therefore, our application notes are clearly implicated here. That's what the probation office said. What did Judge Rambo say? The court adopted the probation officer's stance on this position. Do you recall precisely what she said? No, Your Honor, I don't. I apologize. I know that the trial counsel objected and said that Chekharani should not be applied here. I think what she said was, since it looks like this is an ongoing episode with him, I think I'm going to overrule the objection and not give him acceptance of responsibility. I think that's what she said. I'm pretty minimalistic, but I'm not speaking to Chekharani or to the probation officer's report. We'll all have to go back and take a look at it. If I may, Your Honor, I just would say that what is said in court is informed by the papers that came before. That's a very common practice here, so I think that— We should assume that anything that was said by the probation office was meant by the district court judge? That really can't be the case, is it? No, Your Honor, but I think that— I guess the record stands as it stands, and that was part of what informed the district court's opinion here. Okay. Thank you very much. Appreciate argument from both sides.